# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

| | |
|---|---|
| JAMES O. McCASH,<br><br>                    Plaintiff,<br><br>v.<br><br>TAMIR BIOTECHNOLOGY, INC.,<br><br>                    Defendant. | Case No.: 2:16-cv-00285<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TAMIR BIOTECHNOLOGY, INC.'S MOTION TO DISMISS THE COMPLAINT FILED BY PLAINTIFF JAMES O. McCASH PURSUANT TO *FED R. CIV. P.* 12(B)(2) AND 12(B)(6)**

Garan Lucow Miller, P.C.
1440 West Ridge Street
Marquette, MI 49855
(906) 226-2524

And

OLENDERFELDMAN LLP
422 Morris Avenue
Summit, NJ 07901
(908) 964-2424
*Application for Admission To Be Filed*

Attorneys for Defendant Tamir Biotechnology, Inc.

Of Counsel and On the Brief:
M. Sean Fosmire, Esq.
Howard A. Matalon, Esq.
Richard J. Angowski, Esq.

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................................ 3

STATEMENT OF FACTS .................................................................................................... 3

     A.     McCash's Expression of Interest in the Development of Onconase .............. 3

     B.     McCash's Confidential Offer to Acquire the Oncology Rights in
              Onconase is Not a Binding Contractual Agreement ...................................... 4

     C.     Michael Hawotte's Withdrawal from the Confidential Offer ......................... 5

     D.     The Conduct of the Parties Subsequent to the Confidential Offer ................ 5

     E.     The June 27, 2013 Term Sheet ...................................................................... 7

PROCEDURAL HISTORY .................................................................................................. 7

LEGAL ARGUMENT .......................................................................................................... 8

POINT I

     THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE IT LACKS
     THE PERSONAL JURISDICTION OVER TAMIR PURSUANT TO *FED. R.
     CIV. P.* 12(B)(2) OR, ALTERNATIVELY TRANSFER VENUE ............................ 8

     A.     Standard Under Fed. R. Civ. P. 12(b)(2) ........................................................ 8

     B.     Michigan's Long-Arm Statute ........................................................................ 9

     C.     Standard Under 28 U.S.C.§1404(a)-Transfer of Venue ................................. 12

     D.     Legal Analysis ................................................................................................ 13

           i.   *Fed.R.Civ.P. 12(b)(2)* .............................................................................. 13

           ii.  28 *U.S.C.* 1404(a) ..................................................................................... 14

POINT II

THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(6)
BASED UPON PLAINTIFF'S FAILURE TO ASSERT ANY COGNIZABLE
CLAIMS FOR RELIEF ................................................................................................ 15

A.      Standard Governing Rule 12(b)(6) Motion ..................................................... 15

B.      New Jersey Law Should Be Applied Concerning the
        Rule 12(b)(6) Motion ...................................................................................... 16

C.      McCash is Not the Real Party in Interest Under *Fed.R.Civ.P.* 17(a)............. 17

D.      The Court Should Dismiss Plaintiff's Breach of Contract Claim
        Because the Confidential Offer Did Not Constitute a Binding and
        Enforceable Contract ...................................................................................... 17

E.      McCash's Misrepresentation Claims Are Not Supported By
        Actionable Representations or Reasonable Reliance....................................... 20

F.      The Court Should Dismiss McCash's Claim for Promissory Estoppel .......... 22

G.      The Court Should Dismiss Plaintiff's Unjust Enrichment Claim................... 23

CONCLUSION ....................................................................................................................... 24

## TABLE OF AUTHORITIES

Page

ABD Monroe, Inc. v. Monroe Twp.,
    2008 U.S. Dist. LEXIS 242, at *36 (D.N.J. Jan. 3, 2008) ..........................................18

Alexander v. CIGNA Corp,
    991 F.Supp. 427 (D.N.J. 1998) aff'd 172 F.3d 859 (3d Cir. 1998) ...........................21

Anderson v. Modica,
    4 N.J. 383 (1950) .......................................................................................................20

Appalachian Railcar Servs. V. Boatright Enters.,
    602 F.Supp. 2d 829 (W.D. Mich. 2008) .....................................................................21

Banek Inc. v. Yogurt Ventures USA, Inc.,
    6 F3d 357 (6th Cir. 1993) ...........................................................................................16

Boston Piano & Music Co. v. Pontiac Clothing Co.,
    199 Mich. 141, 147, 165 N.W. 856 (1917)................................................................21

Bovee v. Coopers & Lybrand C.P.A.,
    272 F.3d 356 (6th Cir. 2001) ......................................................................................15

Bridgeport Music, Inc. v. Still N the Water Publ'g,
    327 F.3d 475 (6th Cir. 2003) ......................................................................................10

Builder's Best, Inv. V. Lowe's Cos.,
    2005 U.S. Dist. LEXIS 36417 at *12 (W.D. Mich. Nov. 20, 2005)...........................18

Burger King Corp. v. Rudzewicz,
    471 U.S. 462, 105 S. Ct. 2174, 85 L.Ed. 2d 528 (1985)............................................12

Carver v. Bunch,
    946 F.2d 451 (6th Cir. 1991) ......................................................................................15

Children's Legal Services, PLLC v. Shor Levin and Derita, PC,
    850 F. Supp. 2d 673 (E.D. Mich. 2012)...................................................................9, 10

Commerce Bancorp, Inc. v. BK Int'l Ins. Brokers Ltd.,
    490 F. Supp. 2d 556 (D.N.J. 2007).............................................................................22

Consumers Power Co. v. Amoco Prod. Co.,
    2000 U.S. App. LEXIS 3233 ......................................................................................19

Corestar Intern. Pte. Ltd. v. LPB Communications, Inc.,
    513 F. Supp. 2d 107 (D.N.J. 2007) ............................................................................18

Danuloff v. Color Ctr.,
    1993 U.S. Dist. LEXIS 18783, at *4-6 (E.D. Mich. 1993) .........................................13

Del Sontro v. Cendant Corp.,
    223 F. Supp. 2d 563 (D.N.J. 2002) ............................................................................22

Eerdmans v. Maki,
    573 N.W.2d 329 (1997) .............................................................................................18

Equitable Life Assurance Soc'y of the United States v. Poe,
    143 F.3d 1013 (6th Cir. 1998) ...................................................................................16

Goen Techs. Corp. v. NBTY, Inc.,
    2007 U.S. Dist. LEXIS 65396, at *9-10 (D.N.J. 2007) ..............................................21

Goodyear Dunlop Tires Operations, SA v. Brown,
    564 U.S. 915 (2011) ...................................................................................................9

Green v. Wilson,
    455 Mich. 342, 565 N.W.2d 813 (1997) ....................................................................10

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501 (1947) ..................................................................................................13

Hardy v. Reynolds & Reynolds Co.,
    311 Fed. Appx. 759 (6th Cir. Mich. 2009) .................................................................16

Helicopteros Nacionales de Colombia, S. A. v. Hall,
    466 U.S. 408 (1984) ...................................................................................................9

Hi-Way Motor Co. v. International Harvester Co.,
    247 N.W.2d 813 (Mich. 1976) ...................................................................................20

Hughes v. Panasonic Consumer Elecs. Co.,
    2011 U.S. Dist. LEXIS 79504, at *77 (D.N.J. July 21, 2011) ....................................23

In re Allied Supermarkets, Inc.,
    951 F.2d 718 (6th Cir. Mich. 1991) ...........................................................................20

In re Jackson Nat'l Life Ins. Premium Litig.,
    107 F. Supp. 2d 841 (W.D. Mich. 2000) ...................................................................21

In re Phillips Petroleum Sec. Litig.,
    881 F.2d 1236 (3d Cir. 1989) ................................................................................23

Intera Corp. v. Henderson,
    428 F.3d 605 (6th Cir. 2005) ................................................................................12

International Shoe Co. v. Washington,
    326 U.S. 310 (1945)..............................................................................................9

International Show Car Ass'n v. ASCAP,
    806 F. Supp. 1308 (E.D. Mich. 1992)..................................................................13

Jewish Ctr. Of Sussex County v. Whale,
    432 A.2d 521 (N.J. 1981) .....................................................................................20

Kamalnath v. Mercy Memorial Hosp. Corp.,
    487 N.W.2d 499 (1992) ..................................................................................18, 19

Leila Hosp. & Health Center v. Xonics Medical Systems, Inc.,
    948 F.2d 271 (6th Cir. Mich. 1991).....................................................................22

MK Strategies, LLC v. Ann Taylor Stores Corp.,
    567 F. Supp. 2d 729 (D.N.J. 2008)......................................................................23

Means v. United States Conf. of Catholic Bishops,
    836 F.3d 643 (2016).........................................................................................11-12

Mills's Pride, Inc. v. Continental Ins. Co.,
    300 F.3d 701 (6th Cir. 2002) ...............................................................................16

Milliken v. Meyer,
    311 U.S. 457 (1940)..............................................................................................9

Morgan v. Church's Fried Chicken,
    829 F.2d 10 (6th Cir. 1987) ..................................................................................15

Morton v. Orchard Land Trust,
    180 N.J. 118 (2004) ..............................................................................................18

Nelson v. Xacta 3000 Inc.,
    2009 U.S. Dist. LEXIS 109580 (D.N.J. Nov. 24, 2009) .....................................23

Neogen Corp. v. Neo Gen Screening, Inc.,
    282 F.3d 883 (6th Cir. 2002) ..........................................................................8-9, 12

Nishiyama v. Dickson County,
    814 F.2d 277 (6th Cir. 1987) ...................................................................................15

Omega Constr. Co. v. Altman,
    667 F. Supp. 453 (W.D. Mich. 1987) .......................................................................22

Piper Aircraft Co. v. Reyno,
    545 U.S. 235 (1989)..................................................................................................13

Rainsberger v. McFadden,
    174 Mich. App. 660 (1989) ......................................................................................11

Scheid v. Fanny Farmer Candy Shops, Inc.,
    859 F.2d 434 (6th Cir. 1988) ...................................................................................15

Serras v. First Tennessee Nat'l Ass'n,
    875 F.2d 1212 (6th Cir. 1989) ...................................................................................9

Sifers v. Horen,
    385 Mich. 195 (1971) ...............................................................................................10

Southern Machine Company, Inc. v. Mohasco Industries, Inc.,
    401 F.2d 374 (1968)...........................................................................................11, 12

Stark v. Kent Prod., Inc.,
    233 N.W.2d 643 (1975) ............................................................................................19

State Bank of Standish v. Curry,
    500 N.W.2d 104 (Mich. 1993)..................................................................................23

Step-Saver Data Sys. v. Wyse Tech.,
    939 F.2d 91 (3d Cir. Pa. 1991) .................................................................................20

Stringfield v. Graham,
    212 Fed. Appx. 530 (6th Cir. 2007)............................................................................6

Tekdoc Servs., LLC v. 3i-Infotech Inc.,
    2012 U.S. Dist. LEXIS 115728, at *31 (D.N.J. Aug. 16, 2012)....................................20

Theunissen v. Matthews,
    935 F.2d 1454 (6th Cir. 1991) ....................................................................................9

U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC,
    812 F.3d 294 (3d Cir. 2016) .....................................................................................22

Walden v. Fiore,
    134 S. Ct. 1115, 1123, 188 L. Ed. 2d 12 (2014) ...........................................................12

Watts v. Antkoviak & Antkoviak, P.C.,
    2004 U.S. Dist. LEXIS 8735, at *27 (W.D. Mich. May 11, 2004) ..............................23

Weichert Co. Realtors v. Ryan,
    128 N.J. 427 (1992) ....................................................................................................18

Williams v. MD Helicopters, Inc.,
    2015 U.S. Dist. Lexis 98065, at *5 ...............................................................................8

Zurich Ins. Co. v. Logitrans, Inc.,
    297 F.3d 528 (6th Cir. 2002) ......................................................................................17

## Rules & Citations

*Mich. Comp. Laws §§600.711, 600.715* ...............................................................................10

*Fed.R.Civ.P.* 9(b) ...................................................................................................... 20, 21-22

*Fed.R.Civ.P.* 12(b)(2) ......................................................................................1, 3, 8, 13, 14, 24

*Fed.R.Civ.P.* 12(b)(6) ............................................................................. 1, 3, 6, 12, 15, 16, 19, 24

*Fed.R.Civ.P.* 17(a) ...................................................................................................17

28 *U.S.C.* § 1332....................................................................................................8

28 *U.S.C.* § 1404(a) ................................................................................................1, 12, 13, 14

## PRELIMINARY STATEMENT

Defendant Tamir Biotechnology, Inc. ("Defendant" or "Tamir") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Complaint filed by Plaintiff James O. McCash ("Plaintiff" or "McCash") for failure to state a claim pursuant to *Federal Rules of Civil Procedure 12 (b)(2) and 12(b)(6)*. In the alternative, this Court should transfer this matter to the United States District Court for the District of New Jersey pursuant to 28 *U.S.C.* §1404(a).

Over a two-year period between September, 2012 and October, 2014, Tamir and McCash negotiated on a license agreement relating to the commercial development of Onconase, a cancer-fighting drug application then in development by the company. Those negotiations failed to produce an agreement acceptable to both parties. Now, through litigation almost three years later, McCash seeks to punish Tamir because the negotiations did not achieve his desired result.

Mindful that these negotiations do not and cannot lead to cognizable claims for relief, McCash recasts them as having led to a binding contractual agreement (when nothing could be farther from the case) in the form of a one-page document entitled "Confidential Offer to Acquire the Oncology Rights to Sell Onconase®" ("Confidential Offer"). He then improperly manufactures breach of contract and attendant causes of action based upon the Confidential Offer. McCash also seeks to subject Tamir to the personal jurisdiction of this Court in violation of the Michigan long-arm statutes and the Due Process Clause of the Fourteenth Amendment.

McCash cannot escape the actual language of the Confidential Offer, however, which proves fatal to his claims pursuant to *Fed.R.Civ.P.* 12(b)(6). Indeed, according to the Confidential Offer, McCash himself is not even the real party in interest to assert claims against Tamir.

The Confidential Offer, prepared by McCash and his then anticipated business partner (Michael Hawotte), contradicts all of McCash's allegations concerning the significance of the document. McCash himself did not make the Confidential Offer. Rather, a conceptual, "wholly

1

owned entity" made the Confidential Offer.  McCash and Hawotte apparently intended to form the entity, which did not exist at the time of the offer's creation, and in fact never came into existence. This fictitious entity's offer is couched as "*an expression of intent*" only, and goes on to state that "nothing implied *shall have any legal binding obligation* except for breach of confidentiality."

Indeed, the terms of the Confidential Offer are merely "talking points" as to what rights and consideration might be exchanged between the parties, couched as "*proposed terms to be agreed upon*" at a later date.  Moreover, the last paragraph of the Confidential Offer confirms that no agreement had been reached, and that before reaching any agreement, the parties needed to execute confidentiality agreements and complete due diligence so that the entity could evaluate whether to proceed beyond an offer stage.  The Confidential Offer also contained a 30-day limit for consideration.  The parties never mutually agreed to extend that time period as required.

Perhaps the most damning evidence of the non-binding nature of the Confidential Offer comes from the course of dealing between the parties following its presentation. These dealings include Michael Hawotte's withdrawal from participation in the offer (as McCash's business partner and co-owner of the entity in question) within days of issuing the Confidential Offer to Tamir, as well as letter exchanges confirming McCash's awareness that the offer was never a contractual agreement.  Indeed, Tamir and McCash agreed to abandon the terms of the Confidential Offer in favor of non-binding term sheets reflecting the evolving nature of negotiations.

At best, the Confidential Offer reflects nothing more than discussion points for a license agreement that never materialized; it contains none of the indicia of a binding contractual agreement.  Further, McCash cannot reasonably rely upon such document given its true nature. Under Michigan or New Jersey law (the latter of which Tamir respectfully submits controls the analysis of the claims asserted in the Complaint), the result is the same: McCash does not have viable claims against Tamir arising out of the failure of the parties to finalize the license agreement.

2

For the foregoing reasons as amplified below, the Court should dismiss the Complaint for lack of personal jurisdiction over Tamir pursuant to *Fed.R.Civ.P.* 12(b)(2) or, alternatively, transfer venue to New Jersey District Court. Moreover, if the Court were to reach the merits of the claims, it should dismiss same in accordance with *Fed.R.Civ.P.* 12(b)(6).

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Statement of Facts is based upon the factual allegations of Plaintiff's Complaint as required by *Fed.R.Civ.P.* 12 and supported by the Affidavit of Jamie Sulley, dated February 24, 2017 ("Sulley Aff."). Tamir does not take a position as to the validity of any of the factual allegations of the Complaint or the claims asserted therein (and in fact rejects the material allegations and legal claims asserted therein).

## STATEMENT OF FACTS

### A.      McCash's Expression of Interest in the Development of Onconase

In October 2009, McCash, an investor and shareholder of the company, provided financing to Tamir to initiate a Phase II trial of the oncology drug Onconase in relation to the treatment of patients with Non-Squamous, Non-Small Lung Cancer. Complaint, ¶7. After the October 2009 financing, Tamir focused its efforts on the development of an anti-viral use for Onconase. McCash alleges that this shift in focus, and other management decisions by Tamir, allegedly caused the cancellation of the Phase II trial in early 2011. *Id*. at ¶8.

McCash apparently was interested in acquiring the oncology rights to Onconase, but suggests he was thwarted in his efforts to develop a proposal for its acquisition because Tamir did not provide sufficient information to him. *Id*. at ¶¶9-10. McCash alleges he was further hindered in acquiring these rights by Tamir's decision to destroy certain components of its Onconase inventory and materials on hand and stop making government agency filings because of storage and other related costs associated with the inventory. *Id*. at ¶¶11-12.

3

By June 2012, McCash's expression of interest in having Tamir part with the oncology development rights in Onconase led him to try a different tack: the filing a lawsuit in the Circuit Court of Cook County, Illinois, alleging fraud and breach of fiduciary duty against Tamir (the "2012 Lawsuit"). Using the 2012 Lawsuit as leverage, McCash and his anticipated business partner Michael Hawotte, allegedly negotiated what he refers to as an "agreement" with Tamir to resolve "these issues and conflicts."[1]  *Id*. at ¶16.

## B.   McCash's Confidential Offer to Acquire the Oncology Rights in Onconase is Not a Binding Contractual Agreement

The alleged agreement in question, entitled "Confidential Offer to Acquire the Oncology Rights to Sell Onconase®", was prepared and signed by McCash and Hawotte and directed to Tamir on September 18, 2012. *Id*. at ¶19; Exhibit A to the Complaint. McCash does not explain how this Confidential Offer became a binding agreement. He simply declares in perfunctory fashion that it does and proceeds to compare the conduct of the parties against their alleged contractual obligations.

There is a complete disconnect between McCash's characterization of the Confidential Offer and the language of the document itself. By its express terms, the document is not reflective of an offer directed to Tamir by McCash, but rather is an offer proposed through a yet formed entity identified as "a Company (name TBD)", represented to be a "solely owned entity represented by McCash and Hawotte". *Id*. The Confidential Offer itself states that it is only "***an expression of intent***" on the part of the fictitious entity and that nothing implied in the document ***shall have any legal binding obligation*** upon any parties except for confidentiality. *Id*.

The terms of the Confidential Offer are prospective and include "Rights to be Acquired/Assumed" and "Consideration." In the Confidential Offer, the entity seeks to acquire

---

[1]     McCash alleges that the so-called "agreement" is memorialized in various documents, but only attaches the Confidential Offer to the Complaint.

license rights, assume unspecified material storage costs and finished product and raw materials. The Confidential Offer, however, does not detail the specifics of the rights to be acquired.

The fact that the rights and consideration set forth in the Confidential Offer are merely talking points is explained by the Confidential Offer itself. It expressly states clear that the foregoing terms are only "***proposed terms***" that need to be further "***agreed upon.***" Moreover, the Confidential Offer places preconditions on final agreement because the parties first needed to agree upon: (1) an appropriate confidentiality agreement and (2) completion of a due diligence process by the fictitious entity. Finally, the Confidential Offer contains no language reflecting acceptance by Tamir. Indeed, the Confidential Offer expired within thirty (30) days unless mutually extended.

McCash also claims, without explanation, that Tamir allegedly made material promises and representations that it both had the ability and intent to deliver on its end of the agreement and could and would provide McCash the complete and up-to-date materials, files, etc. *Id*. at ¶23. No such language appears in the Confidential Offer itself and none of these alleged promises or representations are pled with particularity in the Complaint.

## C.     Michael Hawotte's Withdrawal from the Confidential Offer

McCash's Complaint makes little reference to the parties' conduct immediately following the delivery of the Confidential Offer. This is not surprising, considering that the Confidential Offer as written fell apart immediately after Tamir received it. On September 23, 2012, some three days after Tamir received the Confidential Offer, Michael Hawotte (McCash's proposed business partner) withdrew his participation. This is a matter of record not disputed by McCash and reflected in the July 19, 2013 letter from Tamir referenced in the Complaint and discussed below. *See* Complaint, ¶¶33-35.

## D.     The Conduct of the Parties Subsequent to the Confidential Offer

Rather than detail the course of dealing between the parties after presentation of the

5

Confidential Offer, McCash merely submits generalized statements to the Court that Tamir accepted the terms of the Confidential Offer and delayed matters. Once again, the documents cited by McCash in his Complaint (but conveniently not attached to the pleading) betray his assertions.[2]

For example, the May 28, 2013 email discussed at Paragraph 32 of the Complaint directed to McCash by Jamie Sulley (Tamir's President) does not state anywhere that Tamir accepted the Confidential Offer. **Sulley Aff., Exh. A.** Instead, the email merely reflects efforts by Tamir to gather the materials for the due diligence process contemplated under the Confidential Offer.

McCash also makes brief reference in Paragraph 33 of the Complaint to a July 12, 2013 letter he wrote to Jamie Sulley. **Sulley Aff., Exh. B.** The letter contradicts everything McCash states in his pleadings about the nature of the Confidential Offer. McCash concedes in this letter that the Confidential Offer was merely a "*signed offer*" contemplating a "*proposed* license agreement" rather than an actual binding agreement. He further notes that the June 27, 2013 Term Sheet provided by Tamir (discussed *infra*) altered provisions that "*had been previously listed or discussed*" between the parties, again reflecting that the Confidential Offer contained only discussion points. Further confirming the exploratory nature of the Confidential Offer, McCash requests the ability to consult with professionals of his choosing to "determine if any potential to further the oncology platform of Tamir still exists," which was a precondition to entering into any license agreement in the first place.

On July 19, 2013, Lois Voelz, Esq., counsel to Tamir, wrote back to McCash as referenced in Paragraph 33 through 35 of the Complaint. **Sulley Aff., Exh. C.** Ms. Voelz's letter makes clear that Tamir prepared the June 27, 2013 Term Sheet because *the Confidential Offer no longer stated*

---

[2]     When resolving a motion to dismiss pursuant to Rule 12(b)(6), this Court may consider exhibits attached to the complaint, and documents referred to in the complaint and central to the plaintiff's claim, as well as exhibits attached to the defendant's motion to dismiss -- provided such are referenced in the complaint and central to the claims therein. See Stringfield v. Graham, 212 Fed. Appx. 530, 535 (6th Cir. 2007).

*the terms under negotiation*. Ms. Voelz noted that the parties needed a fresh start for a variety of reasons, including the fact that *Mr. Hawotte had removed himself as a party to the Confidential Offer and insisted that his name be removed from the document*. Moreover, all parties agreed that the Confidential Offer did not contemplate terms then under negotiation.

McCash alleges in the Complaint that he did not agree with Tamir's position that the Confidential Offer no longer set forth the terms of the license agreement then under discussion. Nevertheless, McCash *acquiesced* to Tamir's request to proceed with further negotiations framed by the proposed term sheet rather than the Confidential Offer. *Id*. at ¶37.

### E.    The June 27, 2013 Term Sheet

The June 27, 2013 Term Sheet referenced in the July 12 and 19, 2013 letters embodies the evolved state of negotiations between McCash and Tamir at that time concerning a license to develop, manufacture and commercialize Onconase. **Sulley Aff., Exh. D.** The Term Sheet contains language regarding its non-binding nature; it also states that it was prepared for discussion purposes only and did not constitute an offer or a commitment to enter into any binding agreement. McCash admits that in recognition of his willingness to act in good faith with Tamir, he considered and evaluated the term sheet and the iterations that followed. *Id*. at ¶37. At no time during these discussions did McCash claim that a binding contractual commitment from Tamir existed.

The remainder of the allegations of the Complaint confirm that the parties did not reach resolution on the Term Sheet or due diligence. Negotiations between the parties broke down completely in August, 2014. *Id*. at ¶¶37-40.

### PROCEDURAL HISTORY

On December 30, 2016, McCash filed the instant matter against Tamir, asserting claims of: (1) Breach of Contract, (2) Unjust Enrichment, (3) Intentional Misrepresentation, (4) Promissory Estoppel, (5) Negligent Misrepresentation, and (6) Innocent Misrepresentation. All of

these causes of action are based upon the terms and conditions of the Confidential Offer.

The Complaint alleges that this Court has subject matter jurisdiction based upon diversity of citizenship between the parties pursuant to 28 U.S.C. §1332. Although diversity exists between the parties, there is no basis to exercise personal jurisdiction over Tamir. As set forth in Point I, *infra*, the Court cannot exercise personal jurisdiction over Tamir because Michigan's Long-Arm Statute and the Due Process Clause of the Fourteenth Amendment do not permit it.

## LEGAL ARGUMENT

### POINT I

### THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE IT LACKS PERSONAL JURISDICTION OVER TAMIR PURSUANT TO *FED. R. CIV. P.* 12(b)(2) OR, ALTERNATIVELY, TRANSER VENUE

McCash's lawsuit against Tamir in the United States District Court for the Eastern District of Michigan is procedurally invalid. No basis exists for the Court to exercise personal jurisdiction over Tamir. Tamir is incorporated in the State of Delaware and maintains its principal place of business in New Jersey. Tamir has never conducted business in the State of Michigan, has never injected itself into the stream of commerce in this state, and lacks the minimum contacts necessary to trigger personal jurisdiction. Sulley Aff. ¶¶2-5.

The only relationship between Tamir and the State of Michigan is McCash, a state resident. McCash's status as a resident-Plaintiff is insufficient, however, to establish the minimum contacts necessary to subject Tamir to the jurisdiction of the Court. As a result, the Court should dismiss the Complaint pursuant to *Fed. R. Civ. P.* 12(b)(2).

### A.    Standard Under Fed. R. Civ. P. 12(b)(2)

On motion to dismiss a complaint under *Fed.R.Civ.P.* 12(b)(2), a plaintiff bears the burden of demonstrating that a court may exercise personal jurisdiction over a defendant. *Williams v. MD Helicopters, Inc.*, 2015 U.S. Dist. Lexis 98065 *5; *citing, Neogen Corp. v. Neo Gen Screening, Inc.*,

8

282 F. 3d 883, 887 (6ᵗʰ Cir. 2002); *see also, Children's Legal Services, PLLC v. Shor Levin and Derita, PC,* 850 F. Supp. 2d 673, 679 (E.D. Mich. 2012).  In *Goodyear Dunlop Tires Operations, SA v. Brown,* 564 U.S. 915, 918-19 (2011), Justice Ginsburg opined:

> A state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause. *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316 (1945) (assertion of jurisdiction over out-of-state corporation must comply with "'traditional notions of fair play and substantial justice'" (quoting *Milliken* v. *Meyer,* 311 U.S. 457, 463 (1940)). Opinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction. *Helicopteros Nacionales de Colombia, S. A.* v. *Hall,* 466 U.S. 408, 414 (1984).

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. See *International Shoe,* 326 U.S., at 317. Specific jurisdiction, on the other hand, depends on an "affiliatio[n] between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. von Mehren & Trautman, Jurisdiction To Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1136 (1966); see Brilmayer et al., A General Look at General Jurisdiction, 66 Texas L. Rev. 723, 782 (1988). In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." von Mehren & Trautman at 1136.

In response to a motion to dismiss for lack of personal jurisdiction, a plaintiff "may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Children's Legal Services,* 850 F. Supp. 2d at 679 (*citing Theunissen v. Matthews* 935 F.2d 1454, 1458 (6ᵗʰ Cir. 1991)).  A reviewing court then has three procedural alternatives to consider: (1) determine the motion on the affidavits alone; (2) permit discovery for the limited purpose of ruling upon the motion; or (3) conduct an evidentiary hearing on the merits. *Serras v. First Tennessee Nat'l Ass'n,* 875 F.2d 1212, 1214 (6ᵗʰ Cir. 1989).

## B.    Michigan's Long-Arm Statute

When the subject matter jurisdiction of a court is founded in diversity, personal jurisdiction over a defendant is only proper if "it comports with the requirements of the state's

9

long arm statute and federal constitutional due process." *Children's Legal Servs.,* 850 F. Supp 2d at 679 (E.D. Mich. 2012); *see also*, *Mich. Comp. Laws* §§600.711, 600.715. The Sixth Circuit simplified the inquiry: "[w]here the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Id.* at 679; *quoting*, *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003).

Although Michigan courts have often applied Michigan's long-arm statute in an expansive manner, it is not limitless. Michigan courts, when dealing with a claim that does not arise out of an incident occurring in Michigan, may extend personal jurisdiction to the full extent allowed under the due process clause. *Sifers v. Horen*, 385 Mich. 195, (1971). The courts have recognized, however, that the Due Process Clause of the Fourteenth Amendment imposes a strict limitation on the reach of the long-arm statute. *See, Green v. Wilson*, 455 Mich. 342, 565 N.W.2d 813 (1997).

Michigan has codified the long-arm statute, with both its broad and specific jurisdictional components, in Chapter 7 of Michigan's Revised Judicature Act of 1961, Public Act 236, MCL 600.701-775. For corporations and other associations, general personal jurisdiction is *only* justified if a defendant carries out "a continuous and systematic part of its general business" within Michigan. Limited personal jurisdiction is permitted if the defendant, among other things, transacted business in Michigan or took actions (regardless of location) which caused "consequences to occur" in Michigan.

Section 600.711, "General personal jurisdiction over corporations," states:

> The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.
>
> (1) Incorporation under the laws of this state.
>
> (2) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745.

10

(3) The carrying on of a continuous and systematic part of its general business within the state.

Section 600.715, "Corporations; limited personal jurisdiction," states:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

The state and federal decisions applying Michigan's long-arm statute have found that minimum contacts are only met when the claimant can establish that a defendant took some action to "purposely avail itself" of the privilege of doing business in Michigan.    For example, in *Rainsberger v. McFadden*, 174 Mich. App. 660, 663, (1989), the Court ruled that jurisdiction was not proper over an Ontario defendant in a paternity suit.   In its opinion, the Court stated:

> This Court has established a three-part test for determining whether under a given set of circumstances sufficient minimum contacts exist between a nonresident defendant and the state to support the due process requirements of limited personal jurisdiction. [citation omitted].  First, the defendant must purposefully act in or towards the state, thus availing himself of the protection and benefits of its laws; second, the cause of action must arise from the defendant's activities in the state; and third, the defendant's activities must be substantially connected with the state so that the exercise of personal jurisdiction over him would be reasonable.  One important factor bearing upon reasonableness is whether the defendant would anticipate that his actions in the state would result in his being haled into court there. [citation omitted] Other factors bearing upon reasonableness include the burden which would be placed on the defendant, the interest of the state in the matter, and the interest of the plaintiff in obtaining relief. [citation omitted].

Likewise, the Sixth Circuit has adopted the test as set forth in *Southern Machine Company, Inc. v. Mohasco Industries, Inc.*, 401 F.2d 374 (1968).   For example, in *Means v. United States*

11

*Conf. of Catholic Bishops,* 836 F.3d 643 (2016), the Sixth Circuit held that personal jurisdiction over a defendant means more than mere contact with a forum state. Rather, a defendant must purposefully avail itself to that State's court system. The *Means* Court went further and explained its rationale as follows:

> *Southern Machine*'s first prong, "purposeful availment," is "'essential' to a finding of personal jurisdiction." *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005). "'Purposeful availment' . . . is present where the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). "[T]he defendant's conduct and connection with the forum must be "such that he 'should reasonably anticipate being haled into court there.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 474). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 134 S. Ct. 1115, 1123, 188 L. Ed. 2d 12 (2014) (quoting *Burger King Corp.*, 471 U.S. at 475).

*Id.* at 649.

## C.    Standard Under 28 U.S.C. §1404(a) – Transfer of Venue

In the event that the Court does not dismiss the case pursuant to *Fed.R.Civ.P.* 12(b)(2), 28 *U.S.C.* 1404(a) permits the Court to transfer the venue in this matter to the United States District Court of New Jersey. As set forth at length in the Sulley Aff., Tamir is currently operating its business in New Jersey, and any Tamir representatives, documents, and discovery materials are located there. The interests of justice would therefore dictate that District Court in New Jersey, not Michigan, is the proper venue.

Title 28 U.S.C. §1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." To succeed in its quest for transfer of venue, a litigant must meet certain criteria, as follows: (1) the action could have been brought in the transferee district court; (2) a transfer serves in the interest of justice; and (3) transfer is in the convenience of the

12

witnesses and parties. *International Show Car Ass'n v. ASCAP,* 806 F. Supp. 1308, 1310 (E.D. Mich. 1992).

When ruling on a Section 1404(a) motion to transfer, a district court must consider the following factors: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice. *Id.* at 1310 (citations omitted). In short, the Court may consider any factor that may make any eventual trial "easy, expeditious, and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947). The Supreme Court has held that the showing required under 1404(a) is less stringent than that of a motion under *forum non-conveniens. Piper Aircraft Co. v. Reyno,* 545 U.S. 235, 253 (1989). *Danuloff v. Color Ctr.,* 1993 U.S. Dist. LEXIS 18783, at *4-6 (E.D. Mich. 1993).

### D.    Legal Analysis

   i.    *Fed.R.Civ.P.* 12(b)(2)

Applying the well-established principles set forth above, this Court cannot exercise personal jurisdiction over Tamir, or at the very least, the matter should be transferred to the District Court of New Jersey. With respect to general personal jurisdiction contemplated by Section 600.711:

1. Tamir is not incorporated under the laws of the State of Michigan;
2. Tamir has not consented to personal jurisdiction in Michigan; and
3. Tamir does not carry on "continuous and systematic part of its general business within the State."

Likewise, the categories of Section 600.715, which would enable the Court to exercise personal jurisdiction over Tamir on a specific basis, do not apply. Moreover, it cannot be disputed that Tamir:

13

1.   Does not transact any business in Michigan;
2.   Has not been accused of committing a tort in Michigan;
3.   Does not own, use, or possess any real or tangible personal property in Michigan;
4.   Does not provide insurance in Michigan; and
5.   Has not entered into a contract for services to be performed or materials to be delivered in Michigan.

Clearly Michigan's long-arm statutes do not provide an express basis for the Court to exercise personal jurisdiction over Tamir. Therefore, the Due Process Clause of the Fourteenth Amendment takes precedence regarding the determination as to whether the Court may exercise personal jurisdiction over Tamir.

As stated above, Tamir has taken no steps to purposefully avail itself of the forum of the State of Michigan. Tamir does not have any substantial connection to Michigan nor could it have reasonably expected to be "haled" into Court in Michigan. Therefore, the Court need never reach any "minimum contacts" analysis but even if it did, the *only* contact is James McCash, who is a resident. That lone contact is not enough to sustain personal jurisdiction. Consequently, the Court is left with no choice but to dismiss the Complaint in its entirety pursuant to *Fed.R.Civ.P.* 12(b)(2).

ii.   28 *U.S.C.* 1404(a)

In the alternative, none of the witnesses or materials associated with this matter are located in the State of Michigan. Tamir, as the Defendant, is a business located in New Jersey and all corporate records and witnesses are located in New Jersey. *See* Sulley Aff. ¶6. For Tamir to transport all materials to Michigan is inconvenient, costly and impractical. Moreover, compelling unwilling witnesses to attend depositions in Michigan would be difficult, if not impossible. Although McCash could sit for his deposition in Michigan, depositions of any of Tamir employees would need to take place in New Jersey. As a result, the easiest, most expeditious, and inexpensive forum for any trial in this matter is the United States District Court for the District of New Jersey.

14

## POINT II

## THE COMPLAINT MUST BE DISMISSED UNDER RULE 12(B)(6) BASED UPON PLAINTIFF'S FAILURE TO ASSERT ANY COGNIZABLE CLAIMS FOR RELIEF

### A.   Standard Governing Rule 12(b)(6) Motion

*Fed.R.Civ.P.* 12(b)(6) is designed to test whether, as a matter of law, a plaintiff is entitled to legal relief. *Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir. 1987). Before dismissing a complaint for failure to state a claim, a court must conclude "beyond [a] doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir. 1991).

To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). On a motion to dismiss, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief if true." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). A court need not accept as true conclusions of law or unwarranted factual inferences, however. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

As discussed in the analysis below, McCash's contract claims are premised upon the "Confidential Offer," a discussion document without legal significance, let alone reflective of a binding contract. The Confidential Offer speaks of a business not in existence, reflective of mere intentionality and non-binding legal nature, and freely admits that the terms are only proposed and that no agreement on any terms can exist until other agreements are first reached and due diligence is completed to the satisfaction of the offeror. Moreover, the conduct of McCash and his business

15

partner following the presentation of the offer and the evolving discussions about the license agreement debunks any notion that the Confidential Offer was ever a contractual agreement.

McCash's remaining claims of misrepresentation, promissory estoppel and unjust enrichment are similarly flawed as they are premised upon the same facts dispositive of the contract claim. Nothing contained in the Confidential Offer reflects any binding promise, representation or intention by Tamir, and none of it is reliable or capable of being relied upon.

## B.   New Jersey Law Should Be Applied Concerning the Rule 12(b)(6) Motion

A federal court in a diversity case "must apply the conflict rules of the state in which it sits." *Banek Inc. v. Yogurt Ventures USA, Inc.*, 6 F.3d 357, 361 (6th Cir. 1993). Michigan's choice of law rules "require a court to balance the expectations of the parties to a contract with the interests of the states involved to determine which state's law to apply." *Equitable Life Assurance Soc'y of the United States v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998). The Supreme Court of Michigan has followed the approach of the Restatement (Second) of Conflict of Laws, §§187-188 in striking this balance. *See Mill's Pride, Inc. v. Continental Ins. Co.*, 300 F.3d 701, 704-06 (6th Cir. 2002).

According to the Restatement, in the absence of a choice of law by the parties, (as is the case here), the contacts to be taken into account to determine the law applicable include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *See* Restatement (Second) of Conflict of Laws §188. These contacts are to be evaluated per their relative importance to the particular issue. *See Hardy v. Reynolds & Reynolds Co.*, 311 Fed. Appx. 759, 761 (6th Cir. Mich. 2009).

Tamir respectfully submits that New Jersey law governs the analysis of the claims asserted by McCash in his Complaint. As noted in the Sulley Affidavit, the place of alleged contract performance, the place of business of Tamir, and the location of the subject matter of the

16

Confidential Offer (including the alleged requirements placed on Tamir) all demonstrate that New Jersey has the predominant interest in the dispute. Regardless of whether this Court applies Michigan or New Jersey law, however, McCash's claims must be dismissed.

### C. McCash is Not the Real Party in Interest Under *Fed.R.Civ.P.* 17(a)

As noted above, the factual predicate for the claims asserted in the Complaint is the Confidential Offer. The Confidential Offer makes clear that the party making the offer and assuming the rights and benefits allegedly conveyed is *not* McCash, but rather is defined as "[t]he undersigned, a Company (name TBD), a private and solely owned entity represented by James O. McCash and Michael Hawotte". It is this fictitious entity to whom any alleged promises are made by Tamir, forming the basis for the alleged misrepresentation or detrimental claims.

*Fed. R. Civ. P.* 17(a) requires any action not prosecuted in the name of the real party in interest to be dismissed. *Zurich Ins. Co. v. Logitrans, Inc.,* 297 F.3d 528 (6th Cir. 2002). McCash has no claims to assert against Tamir because the premise of his arguments is that Tamir accepted the contractual obligations of the Confidential Offer, presented by an entity represented by McCash and Hawotte. Such entity remains fictitious to date and was never formed by McCash or Hawotte (who withdrew from involvement or participation in the offer and entity). In any case, the identity of such entity was never introduced into the terms and conditions of the alleged agreement or for that matter identified by McCash in his pleadings. As such entity is not the plaintiff in this action and in fact was only conceptualized in the written document, Tamir respectfully submits that the claims asserted by McCash must be dismissed.

### D. The Court Should Dismiss Plaintiff's Breach of Contract Claim Because the Confidential Offer Did Not Constitute a Binding and Enforceable Contract

By its express terms, the Confidential Offer is a non-binding expression of intent on the part of a non-existent entity that never came into existence (because of an immediate falling out between McCash and Hawotte on the Confidential Offer) to acquire license rights without

17

specificity based upon a series of additional actions necessary to become binding on the parties, none of which occurred. Nothing in the document reflects an actual agreement between the parties. Much to the contrary, the document states explicitly that nothing has been agreed to and that even the **proposed** terms required further agreement after the contingencies of an executed confidentiality agreement and due diligence process were completed. In addition, as noted above, the parties rejected the Confidential Offer in favor of a term sheet approach that did not ultimately lead to a binding contractual agreement.

Both New Jersey and Michigan law make clear that a contract requires both an offer and acceptance. *See Builder's Best, Inv. v. Lowe's Cos.,* 2005 U.S. Dist. LEXIS 36417, at *12 (W.D. Mich. Nov. 20, 2005); *Eerdmans v. Maki,* 573 N.W.2d 329, 332 (1997*). See Corestar Intern. Pte. Ltd. v. LPB Communications, Inc.*, 513 F. Supp. 2d 107, 116 (D.N.J. 2007) ("At the most basic level, a contract consists of an offer, acceptance and consideration."); *ABD Monroe, Inc. v. Monroe Twp.*, 2008 U.S. Dist. LEXIS 242, at *36 (D.N.J. Jan. 3, 2008). New Jersey courts have repeatedly held that a "contract is formed when there is meeting of the minds between the parties and an unconditional acceptance." *Morton v. Orchard Land Trust*, 180 N.J. 118, 129-30 (2004). Thus, "[i]t is requisite that there be an unqualified acceptance to conclude the manifestation of assent" (or, in plain English, to establish the acceptance of a contract). *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435-36 (1992).

Mere discussions and negotiation cannot be a substitute for the formal requirements of a contract. *Id.* An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it. *Id.* "Acceptance must be unambiguous and in strict conformance with the offer." *Id.* A valid contract requires a "meeting of the minds" on all the essential terms. *Kamalnath v. Mercy Memorial Hosp. Corp.*, 487 N.W.2d 499, 503 (1992). Meeting of the minds is a figure of speech

18

for mutual assent, and "it must be judged by an objective standard, looking to the express words of the parties and their visible acts." *Stark v. Kent Prod., Inc.,* 233 N.W.2d 643, 645 (1975).

As explained above, the parties never reached agreement on terms of the Confidential Offer, the conditions precedent to the development of the license agreement never existed and there was no license agreement accepted by the parties. Put charitably, the document is at best a non-binding letter of intent, which as McCash recognizes are just "general statements with respect to specific undertakings rather than a binding contractual agreement". Complaint, ¶24. As set forth by the Sixth Circuit in *Consumers Power Co. v. Amoco Prod. Co.*, 2000 U.S. App. LEXIS 3233, "[n]either mere discussions and negotiations… *nor a mere expression of intention* forms a binding contract." Id. at *9 (quoting *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 194 Mich. App. 543, 549 (1992)(emphasis added). Further analysis is simply inappropriate where the terms and conditions of a document are clear; a court cannot make a contract where none exists.

Moreover, the events subsequent to the presentation of the Confidential Offer make clear that it has no legal significance. On September 23, 2012, some five days after its presentation, Michael Hawotte, one of the two representatives of the entity who signed the agreement on its behalf, withdrew his involvement and participation in the offer altogether. Accordingly, the Confidential Offer became invalid as it no longer reflected the position of its designated representatives. In addition, the events occurring in the Summer of 2013 recounted in the Statement of Facts above also demonstrate unequivocally that the Confidential Offer merely reflected discussion points that were ultimately superseded by an evolving negotiation process that McCash himself participated in.

For the reasons set forth above, the Court should grant Defendant's motion pursuant to *Fed.R.Civ.P.* 12(b)(6) with regard to Plaintiff's breach of contract claim, as no valid and enforceable contract (nor letter of intent) exists between the parties.

### E.    McCash's Misrepresentation Claims Are Not Supported By Actionable Representations or Reasonable Reliance

McCash asserts three separate but related misrepresentation claims against Tamir in his Complaint, including: (1) intentional misrepresentation (fraud); (2) negligent misrepresentation; and (3) innocent misrepresentation. New Jersey and Michigan law are largely similar in their treatment of misrepresentation claims, although New Jersey does not recognize innocent misrepresentation as a valid cause of action.[3] All of the misrepresentation claims rely as a factual predicate upon the alleged promises contained in the Confidential Offer, specifically what is asserted in Paragraphs 21 and 22 of the Complaint. No additional statements are made in the Complaint regarding any promises made by Tamir to McCash, which in any event are not plead with sufficient particularity under *Fed.R.Civ.P.* 9(b) as required by this Court.

Under New Jersey or Michigan law, intentional misrepresentation is the same as fraud, and requires the plaintiff to prove the following elements by clear and convincing evidence: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *Jewish Ctr. of Sussex County v. Whale*, 432 A.2d 521, 524 (N.J. 1981); *Step-Saver Data Sys. v. Wyse Tech.*, 939 F.2d 91, 106 (3d Cir. Pa. 1991); *In re Allied Supermarkets, Inc.*, 951 F.2d 718, 723 (6th Cir. Mich. 1991); *Hi-Way Motor Co. v. International Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). Negligent and innocent misrepresentation are only distinct from fraud in that there is no scienter requirement.

In both New Jersey and Michigan, fraud and misrepresentation claims cannot be predicated upon statements that are promissory in nature at the time they are made and that involve actions to be performed at a future time. *Anderson v. Modica*, 4 N.J. 383, 391-92 (1950). Statements about

---

[3]   See, e.g., Tekdoc Servs., LLC v. 3i-Infotech Inc., 2012 U.S. Dist. LEXIS 115728, at *31 (D.N.J. Aug. 16, 2012).

future or contingent events, probabilities, expectations or what will be done in the future, *cannot* constitute actionable fraud. *Alexander v. CIGNA Corp.*, 991 F.Supp. 427 (D.N.J. 1998) aff'd 172 F.3d 859 (3d Cir. 1998). Michigan law goes further than New Jersey and holds that such statements are merely "contractual in their nature, and do not constitute fraud." *Boston Piano & Music Co. v. Pontiac Clothing Co.*, 199 Mich. 141, 147, 165 N.W. 856 (1917). *See also Appalachian Railcar Servs. v. Boatright Enters.*, 602 F. Supp. 2d 829, 880 (W.D. Mich. 2008). As such, none of the alleged statements made by Tamir constitutes actionable misrepresentations.

Furthermore, under Michigan and New Jersey law, reasonable reliance is an essential element of all misrepresentation claims. *See In re Jackson Nat'l Life Ins. Premium Litig.*, 107 F. Supp. 2d 841, 865 (W.D. Mich. 2000); *Goen Techs. Corp. v. NBTY, Inc.*, 2007 U.S. Dist. LEXIS 65396, at *9-10 (D.N.J. 2007). McCash's misrepresentation claims are premised on the Confidential Offer. The statements contained in the Confidential Offer are promissory statements regarding future acts that are not actionable. McCash cannot claim he reasonably relied upon the alleged promises asserted in the Confidential Offer because the language contained in the Confidential Offer merely reflects an expression of interest by McCash through his entity as to things he wants from Tamir, framed in a non-binding document later superseded by Hawotte's withdrawal and course of dealing. If anything, it was inherently unreasonable for McCash to rely on a non-binding offer made by a business he had not even formed. Accordingly, none of the statements contained in the Confidential Offer is sufficient to state a cognizable claim of fraud or misrepresentation under New Jersey or Michigan law.

To the extent that McCash claims that Tamir made promises outside of the Confidential Offer, such claims fail to satisfy the heightened pleading standard for such a claim.[4] Under *Fed*

---

[4]     McCash's Complaint contains no additional detail whatsoever regarding the alleged misrepresentations. For example, McCash alleges that "[i]n making the [Confidential Offer], Tamir made certain material promises and representations to McCash...." Compl. ¶69. Such conclusory assertions do not provide the required particularity.

*R. Civ. P.* 9(b), to make out a fraud or misrepresentation claim, courts have made it clear that a plaintiff "must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied." As New Jersey courts have explained, "[a] plaintiff alleging fraud must therefore support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story -- that is, the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Michigan law treats the subject matter similarly. Fraud or intentional misconduct allegations must be "concrete enough to give defendants fair notice of the grounds of the complaint." *Omega Constr. Co. v. Altman*, 667 F. Supp. 453, 459 (W.D. Mich. 1987). Given the defective nature of McCash's pleadings concerning his misrepresentation claims, this Court should dismiss them accordingly.

### F.     The Court Should Dismiss McCash's Claim for Promissory Estoppel

Under New Jersey and Michigan law, the elements of promissory estoppel are largely the same: (1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character by the promisee; (3) producing reliance or forbearance of that nature; and (4) in circumstances such that the promise must be enforced. *Commerce Bancorp, Inc. v. BK Int'l Ins. Brokers, Ltd.*, 490 F. Supp. 2d 556, 561 (D.N.J. 2007); *See Leila Hosp. & Health Center v. Xonics Medical Systems, Inc.*, 948 F.2d 271, 275 (6th Cir. Mich. 1991).

This cause of action suffers from the same fatal flaws as McCash's misrepresentation claims. First, Tamir made no clear and definite promises. "[A] truthful statement as to the present intention of a party with regard to his future acts is not the foundation upon which an estoppel may be built. The intention is subject to change." *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 576 (D.N.J. 2002). Similarly, under Michigan law, "the *sine qua non* of the theory of promissory estoppel is that the promise be clear and definite." *State Bank of Standish v. Curry*, 500 N.W.2d

22

104, 108 (Mich. 1993). Any statements that are "indefinite, equivocal, or not specifically demonstrative of an intention respecting future conduct does not constitute a promise, but may instead be a mere statement of belief or a prediction of future events." *Id.* (emphasis added). Indeed, where as in the present case, a party merely expresses intent and such expression is made in the course of preliminary negotiations when material terms of the agreement are lacking, "the degree of certainty necessary in a promise is absent." *Id.*

Even if this Court were to conclude that the Confidential Offer stated definite promises by Tamir, McCash could not reasonably rely upon such promises for reasons set forth above in the discussion of McCash's misrepresentation claims. Indeed, the Third Circuit has specifically held that "the reliance upon a mere expression of future intention cannot be reasonable, because such expressions do not constitute a sufficiently definite promise." *See In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1250 (3d Cir. 1989)(internal quotations and citations omitted).

## G.     The Court Should Dismiss Plaintiff's Unjust Enrichment Claim

Finally, McCash's Complaint fails to state a proper claim of unjust enrichment. The elements of an unjust enrichment claim under New Jersey and Michigan law are similar, although more exacting under New Jersey law. [5] This cause of action requires a plaintiff to demonstrate the receipt of a benefit by the defendant from the plaintiff and an inequity resulting from the retention of the benefit by the defendant. *See Watts v. Antkoviak & Antkoviak, P.C.*, 2004 U.S. Dist. LEXIS 8735, at *27 (W.D. Mich. May 11, 2004) (applying Michigan law); *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733 (D.N.J. 2008)(applying New Jersey law).

McCash's unjust enrichment claim suffers from the same defects as his contract and

---

[5]     In New Jersey, an unjust enrichment claim "requires that [a] plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights. See Hughes v. Panasonic Consumer Elecs. Co., 2011 U.S. Dist. LEXIS 79504, at *77 (D.N.J. July 21, 2011). Furthermore, there must be a direct relationship between the parties. See Nelson v. Xacta 3000 Inc., 2009 U.S. Dist. LEXIS 109580 (D.N.J. Nov. 24, 2009).

misrepresentation claims.   In his unjust enrichment claim, McCash asserts that the unjust enrichment in question consists of Tamir's failure to uphold the agreement expressed by the Confidential Offer.  Complaint, ¶49. Given that no binding agreement existed and McCash knew or should have known that the Confidential Offer did not reflect any binding commitment or obligation on the part of Tamir, no unjust enrichment existed.  In any case, it was certainly unreasonable for McCash to expect reciprocal acts by Tamir in return for whatever benefits McCash asserts he provided to Tamir during the course of the parties' negotiations.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court dismiss Plaintiff's Complaint pursuant to *Fed. R. Civ. P.* 12(b)(2) and *Fed. R. Civ. P.* 12(b)(6).  In the alternative, the Court should transfer the matter to the United States District Court for the District of New Jersey.

Respectfully submitted,

_____/s/_____
M. Sean Fosmire
GARAN LUCOW MILLER, P.C.
Attorney for Defendant
1440 W. Ridge Street
Marquette, MI 49855
(906) 226-2524
sfosmire@garanlucow.com

And

Howard A. Matalon
Richard Angowski
OLENDERFELDMAN LLP
422 Morris Avenue
Summit, NJ 07901
(908) 964-2424
*Application for Admission To Be Filed*

Attorneys for Defendant Tamir Biotechology, Inc.

Dated:  February 28, 2017

24