NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES O. MCCASH,<br><br>Plaintiff,<br><br>v.<br><br>TAMIR BIOTECHNOLOGY, INC.,<br><br>Defendant. | Civil Action No.: 17-2721 (JLL)<br><br>**OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of a Motion to Dismiss this action filed on behalf of Defendant Tamir Biotechnology, Inc. ("the Company"). (ECF No. 21-1). Plaintiff James O. McCash has opposed the Motion. (ECF No. 30). Defendant has replied to Plaintiff's Opposition. (ECF No. 32). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court grants Defendant's Motion to Dismiss.

I. **Background**[1]

Plaintiff James O. McCash is a resident of the State of Michigan. (ECF No. 1, Complaint, "Compl." ¶ 1). Defendant Tamir Biotechnology, Inc. is a Delaware corporation with its principal

---

[1] The facts as stated herein are taken as alleged by Plaintiff in the Complaint. (ECF No. 1). For purposes of this Motion to Dismiss, these allegations are accepted by the Court as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008) ("The District Court, in deciding a motion [to dismiss under Rule] 12(b)(6), was required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff].").

place of business in New Jersey (Id. ¶ 2).[2] Plaintiff is a former investor in and shareholder of the Company. (Id. ¶ 6).

In October 2009, Plaintiff provided financing to Defendant to initiate a Phase II trial of the drug Onconase "in relation to the treatment of patients with Non-Squamous, Non-Small Cell Lung Cancer." (Id. ¶ 7). Thereafter, Defendant shifted its efforts to the development of an anti-viral use for Onconase. (Id. ¶ 8). Plaintiff alleges that this shift in focus both was contrary to the express purpose of his financing of Onconase and ultimately resulted in the cancellation of the Phase II trial in early 2011. (Id.). In the months that followed, Defendant agreed to entertain potential partners and buyers for the Onconase platform. (Id. ¶ 9). Defendant notified Plaintiff that if he was interested in buying the platform, he should submit a proposal detailing, *inter alia*, an asset valuation. (Id.).

Plaintiff alleges that, in or around March or April 2011, Defendant refused to negotiate with Plaintiff in good faith and failed to give Plaintiff the necessary information for him to provide a sufficient proposal or valuation. (Id. ¶¶ 10, 11). Plaintiff further alleges that during this same period, due to storage and other related costs, Defendant notified Plaintiff that it would destroy certain components of and materials related to its Onconase inventory and cease making government agency filings. (Id. ¶ 11). Plaintiff objected to the destruction of these assets, citing them as part and parcel of the Onconase platform Plaintiff sought to obtain. (Id. ¶ 12). Plaintiff further alleges that handwritten notes indicate that Defendant told Plaintiff "anything he want[ed] to hear" so that Plaintiff would continue to finance the Company. (Id. ¶ 13).

---

[2] Plaintiff's Complaint alleges that Defendant's principal place of business is San Diego, California. (Compl. ¶ 2). However, the Honorable Robert J. Jonker, U.S.D.J. of the Western District of Michigan, Southern Division, previously stated that "[i]t is undisputed that Tamir's place of incorporation is Delaware and its principal place of business is in New Jersey." (ECF No. 16 at 4). This Court sees no reason to disturb Judge Jonker's finding.

Against the above facts, Plaintiff filed a lawsuit against Defendant on June 26, 2012 in the Circuit Court of Cook County, Illinois, alleging fraud and breach of fiduciary duty ("2012 Lawsuit"). (Id. ¶ 36). Between the initiation of the 2012 Lawsuit and September 18, 2012, Plaintiff and his anticipated business partner, Michael Hawotte ("Mr. Hawotte"), engaged in negotiations with Defendant through interim CEO and CFO Larry Kenyon ("Mr. Kenyon"). (Id. ¶ 17). Plaintiff alleges that the Parties ultimately reached an agreement to resolve the issues surrounding the 2012 Lawsuit. (Id.). Plaintiff alleges that the agreement between Plaintiff and Defendant is memorialized in various documents "including but not limited to the Confidential Offer executed in September 2012 (attached as Exhibit A)." (Id. ¶ 19, Exhibit A). The document most salient to this case is the Confidential Offer to Acquire the Oncology Rights to Onconase ("Confidential Offer"), which Plaintiff alleges set forth the material terms of the alleged agreement.[3] (Id. ¶ 20, Exhibit A).

According to the express terms of the Confidential Offer, Plaintiff was allegedly required to withdraw the 2012 Lawsuit and convert five (5) promissory notes made by Defendant into Tamir common stock. (Id. ¶¶ 21). Plaintiff alleges that he complied with these obligations. (Id. ¶¶ 25). Plaintiff further alleges that per the Confidential Offer, Defendant agreed to (1) grant Plaintiff the exclusive license for the development, manufacturing, marketing, and sale of Onconase; (2) grant Plaintiff the exclusive license to all intellectual property related to the oncological use of

---

[3] According to the Complaint, the details of the Confidential Offer were discussed and negotiated by Mr. Hawotte and Mr. Kenyon via email and telephone between late June 2012 and September 18, 2012. (Id. ¶ 20). Plaintiff alleges that during this time, various drafts and markups of the Confidential Offer, containing material terms of the Agreement, were exchanged. (Id.) However, Plaintiff has failed to submit to the Court–by way of an additional attachment or otherwise–any documents regarding the Agreement other than the Confidential Offer. (Compl. at Exhibit A). Notwithstanding Plaintiff's continued reference in the Complaint to a separate "Agreement" and "Confidential Offer" (Id. ¶¶ 17, 19), for purposes of clarity, the Court considers the Confidential Offer to be representative of any alleged agreement reached between Plaintiff and Defendant regarding Plaintiff's dismissal of the 2012 Lawsuit. Further, for the reasons discussed below, the Court finds that this Confidential Offer does not constitute a legally-binding agreement.

3

Onconase; (3) turn over to Plaintiff all finished product, a portion of both active pharmaceutical ingredient ("API") inventory and raw materials, all oncology regulatory files, and all oncology manufacturing files for Onconase; and (4) provide Plaintiff with a warrant to purchase 23,700,000 shares in Tamir at a price of $0.01 per share. (Id. ¶ 22).

Following Plaintiff's signing of the Confidential Offer, Plaintiff moved forward with plans to advance the Onconase platform. (Id. ¶ 28). Specifically, Plaintiff formed partnerships with third-parties to assist in the management and financing of a 60-patient trial. (Id.). Plaintiff also engaged in discussions centered around the use of Onconase and related clinical trial research opportunities with the Mayo Clinic of Rochester, Minnesota. (Id.). Plaintiff alleges that as a result of Defendant's delay in providing the items required under the Confidential Offer, the Mayo Clinic and other third-parties abandoned efforts and discussions regarding the Onconase platform. (Id. ¶ 30).

According to the Complaint, Plaintiff received inconsistent correspondence from Defendant regarding both the existence of items Plaintiff alleges he was due under the Confidential Offer, and Defendant's alleged obligations pursuant to the Confidential Offer. (Id. ¶¶ 32-34). Plaintiff alleges that, on May 28, 2013, the President of the Company, Dr. Jamie Sulley ("Dr. Sulley") confirmed by written correspondence the terms of the Confidential Offer. (Id. ¶ 32). Plaintiff further alleges that Dr. Sulley both confirmed the existence of the regulatory files, eggs, and canisters of API, and acknowledged Defendant's obligation to turn them over to Plaintiff pursuant to the Confidential Offer. (Id.).

On July 19, 2013, Plaintiff received correspondence from Lois B. Voelz ("Ms. Voelz"), an attorney representing Defendant, informing Plaintiff that the Investigational New Drug Application was "inactive." (Id. ¶¶ 33-34). According to the Complaint, Ms. Voelz would not

indicate whether the regulatory files, eggs, and canisters of API still existed. (Id. ¶ 34). Ms. Voelz also asserted, in reference to a prior telephone call on June 20, 2013, that the Confidential Offer "did not properly state the terms under negotiation" and that the Parties would be required to make a "fresh start with a new and comprehensive term sheet." (Id. ¶ 35).

Plaintiff alleges that Ms. Voelz's correspondence was vague and that Plaintiff disagreed with the statements contained therein. (Id. ¶ 36). Nevertheless, Plaintiff continued to negotiate with Defendant. (Id. ¶ 37). Plaintiff reviewed several iterations of Defendant's proposed term sheet and continued to inquire as to whether Defendant was in possession of the items Plaintiff believed he was due under the Confidential Offer. (Id.). Plaintiff alleges that during the course of this due diligence, the question remained whether Defendant was in possession of the items Plaintiff believed he was due pursuant to the Confidential Offer. (Id. ¶ 38). After asking Ms. Voelz whether these items were still in Defendant's possession, Plaintiff received written correspondence from Ms. Voelz, dated August 24, 2014, indicating that "the Company [would] not entertain [his] extraneous demands concerning company assets." (Id. ¶¶ 38-39).

Against this backdrop, Plaintiff initiated the present action against Defendant in the United States District Court for the Western District of Michigan, Northern Division on December 30, 2016. (ECF No. 1). On April 19, 2017, this matter was transferred to this Court pursuant to 28 U.S.C. § 1404(a). (ECF No. 16). Plaintiff's Complaint contains six claims: Breach of Contract (Count I); Unjust Enrichment (Count II); "Intentional" Misrepresentation (Count III); Promissory Estoppel (Count IV); Negligent Misrepresentation (Count V); and Innocent Misrepresentation (Count VI). (Compl. ¶¶ 41-81).[4]

---

[4] The Court construes Plaintiff's claim for "intentional misrepresentation" as a claim for fraudulent misrepresentation.

Defendant moved to dismiss Plaintiff's Complaint on May 12, 2017 for failure to state a claim upon which relief can be granted. (ECF No. 21). Defendant argues that because the Confidential Offer was made by a fictitious entity that never came into existence, Plaintiff's claims should be dismissed as Plaintiff is not a real party in interest under Federal Rule of Civil Procedure 17(a). (ECF No. 21-1 at 2, 12). Further, Defendant argues that the language of the Confidential Offer is indicative of an absence of legal significance and is reflective of the document's non-binding nature. (Id. at 10). Defendant asserts that the Confidential Offer existed as a letter of intent and that the terms contained therein required other agreements and due diligence before the Parties could reach a binding contract. (Id.). Plaintiff has opposed Defendant's Motion (ECF No. 30), and this matter is now ripe for the Court's adjudication.

## II. **Legal standard**

Federal Rule of Civil Procedure 8(a) requires that a Complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's short and plain statement of the claim must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

In evaluating the sufficiency of a complaint, a court must "accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir.2008) (quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 545. Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557); *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005) ("[A] Court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss."). To that end, a Court considering a motion to dismiss must take account of the elements necessary to plead the claims alleged in the complaint.

### III. Analysis[5]

#### A. Federal Rule of Civil Procedure 17(a)

Defendant moves to dismiss Plaintiff's complaint for lack of standing pursuant to Federal Rule of Civil Procedure 17(a), which provides that "[a]n action must be prosecuted in the name of the real party in interest." (ECF No. 21-1 at 12-13; ECF No. 32 at 2-3). Specifically, Defendant argues that Plaintiff lacks standing because the Confidential Offer was made between Defendant and a fictitious entity, "a Company (name TBD)," which Plaintiff has not officially formed. (Id.). Therefore, according to Defendant, only "a Company (named TBD)" has standing to sue on the Confidential Offer. (ECF No. 21-1 at 12-13; ECF No. 32 at 2-3). Defendant cites a Fifth Circuit case, *Schaffer v. Universal Rundle Corp.*, 397 F.2d 893 (5th Cir. 1968), for "the general rule that a corporation is the proper party to bring contract and tort claims on its own behalf." (ECF No. 32 at 3).

The Court is not moved by Defendant's standing argument. Federal Rule of Civil Procedure 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest." Rule 17 lists parties that "may sue in their own names without joining the person for

---

[5] The Parties agree that New Jersey law controls all of Plaintiff's claims. (*See* ECF No. 21-1 at 11-12; ECF No. 30 at 5).

7

whose benefit the action is brought[.]" Fed. R. Civ. P. 17(a)(1). Among those parties is "a party with whom or in whose name a contract has been made for another's benefit[.]" Fed. R. Civ. P. 17(a)(1)(F). "The real party in interest ensures that under governing substantive law, the plaintiffs are entitled to enforce the claim at issue." *HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1196 (3d Cir. 1996).

Advisory Committee Notes to the 1966 Amendment of Rule 17 provides that "the modern function of the rule in its negative aspect is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to ensure generally that the judgment will have its proper effect as res judicata." In this case, Defendant concedes that the "Company" on whose behalf the Confidential Offer was signed "remains fictitious to date and was never formed." (ECF No. 21-1 at 12). Accordingly, this case does not present a risk that Defendant will be sued by Plaintiff and then again by a non-existent entity. Moreover, the Confidential Offer stated that the "Company (name TBD)" is "a private and solely owned entity represented by *James O. McCash* . . ." (Compl. at Exhibit A) (emphasis added). Plaintiff is James O. McCash who also signed the Confidential Offer. (Id.). Accordingly, the Court rejects Defendant's argument that Plaintiff lacks standing.

### B. Breach of Contract

Defendant moves to dismiss Plaintiff's claim for breach of contract for failure to state a claim upon which relief can be granted. (ECF No. 21-1 at 13-16). Defendant argues that the Confidential Offer expressly stated that it is a non-binding letter of intent indicating an intent not to be bound thus "mak[ing] clear that it has no legal significance." (Id. at 16). Plaintiff argues that the Confidential Offer is a valid and enforceable contract because the Confidential Offer sets out all agreed upon material terms between the Parties and "only perfunctory and routine elements,

such as execution of subsequent 'confidentiality agreements' and completion of 'satisfactory' 'due diligence' remained." (ECF No. 30 at 7). Plaintiff further argues that a letter of intent is enforceable where there is evidence that the Parties intended to be bound. (Id. at 8).

"A contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 435 (1992) (quoting *West Caldwell v. Caldwell*, 26 N.J. 9, 24-25 (1958)); *see also Tubbs v. Northern Am. Title Agency*, 531 Fed. Appx. 262, 268-69 (3d Cir. 2013). "Therefore[,] parties create an enforceable contract when they agree on its essential terms and manifest an intent that the terms bind them." *Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004). Moreover, "[i]t is requisite that there be an unqualified acceptance to conclude the manifestation of assent." *Johnson & Johnson v. Charmley Drug Co.*, 11 N.J. 526, 539 (1953); *see also Weichert Co. Realtors*, 128 N.J. at 436-37.

Depending on the ultimate intentions of the parties, a letter of intent may or may not bind the parties. *See Ilowite v. Diopsys*, No. 04-2368, 2008 WL 305267, at *4 (D.N.J. Jan. 31, 2008) (finding that "there is ample evidence to show that the parties intended the Letter [of Intent] to constitute a contract"); *Bunky, Inc. v. Hammel*, No. MID-L-167-04, 2005 WL 3772487, at *5 (N.J. Super. Court. App. Div. Feb. 17, 2006) (citing *Morales v. Santiago*, 217 N.J. Super. 496, 501 (App. Div. 1987)). Indeed, "[i]f the parties intend to be bound by their preliminary agreement and view the later written contract as merely a memorialization of their agreement, they are bound by the preliminary agreement." *Bunky, Inc.*, 2005 WL 3772487, at *5 (quoting, in full, *Morales*, 217 N.J. Super. at 501-02). Otherwise, the parties are not bound by the letter of intent. *Id.*

Defendant argues that the Confidential Offer is nothing more than a letter of intent and as such, Plaintiff fails to state a claim upon which relief can be granted for breach of contract. (ECF

No. 21-1 at 13-16). Plaintiff relies on *Ilowite v. Diopsys*, No. 04-2368, 2008 WL 305267 (D.N.J. Jan. 31, 2008), for the proposition that a valid contract exists where a letter of intent sets out all "material terms establishing the rights and obligations of the parties." (ECF No. 30 at 8). In *Ilowite*, the court cited language in the letter of intent indicating that the parties' intent was for the letter to be an offer of employment. *See Ilowite*, 2008 WL 305267, at *4-5. Indeed, the letter of intent contained explicit language that it was an offer of employment, and there was strong evidence that the parties intended to be bound by the letter of intent because of the defendant's subsequent conduct in naming the plaintiff as an employee listed on its website. *See id.*

This case is distinguishable from *Ilowite*. Nowhere did the letter of intent in *Ilowite* state that it had no legally binding effect, *see generally Ilowite*, 2008 WL 305267, whereas here, the Confidential Offer explicitly stated that "[t]his offer is an expression of intent and *nothing implied shall have any legal binding obligation* except for breach of confidentiality." (Compl. at Exhibit A) (emphasis added). The Confidential Offer further states that "*[a]ll proposed terms to be agreed upon after execution* of appropriate confidentiality agreements and completion of satisfactory due diligence by the undersigned and/or designated agents." (Id.) (emphasis added). This express language demonstrates the clear intent of both Parties to not be bound by the Confidential Offer but rather to narrow negotiations for a future agreement. Moreover, Plaintiff fails to allege any facts or conduct of Defendant indicating that Defendant intended the Confidential Offer to be legally binding. As such, the Confidential Offer is not a contract beyond imposing an obligation of confidentiality. Therefore, the Court will grant Defendant's motion to dismiss Plaintiff's claim for breach of contract, and will dismiss that claim without prejudice.

**C. Unjust Enrichment**

Defendant moves to dismiss Plaintiff's claim for unjust enrichment for failure to state a claim upon which relief can be granted. (ECF No. 21-1 at 20). Defendant argues that the express language of the Confidential Offer runs contrary to any reasonable inference that Plaintiff expected any sort of remuneration from any alleged benefit conferred on Defendant. (Id. at 21-22). Plaintiff argues that the Confidential Offer was binding, that he fulfilled its terms, and that he expected remuneration. (ECF No. 30 at 14).

"To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)). In addition, Plaintiff must have "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.*; *see also Callano v. Oakwood*, 91 N.J. Super. 105, 109 (App. Div. 1966).

Plaintiff argues that it would be unjust to not receive restitution from Defendant after Plaintiff dropped the 2012 Lawsuit against Defendant and converted five promissory notes into Tamir common stock under the terms of the Confidential Offer. (Compl. ¶¶ 21, 25, 46-50). However, by the mere fact that the Confidential Offer stated that it was not legally binding (Compl. at Exhibit A), Plaintiff could not have expected remuneration. As such, Plaintiff's claim for unjust enrichment is dismissed without prejudice, as to allow Plaintiff an opportunity to amend his deficient pleading.

**D. Promissory Estoppel**

Defendant moves to dismiss Plaintiff's claim for promissory estoppel for failure to state a claim upon which relief can be granted. (ECF No. 21-1 at 20). Defendant argues that the Confidential Offer was a letter of intent and that Plaintiff could not have reasonable relied upon

an expression of a future intention because those do not constitute sufficiently definite promises. (Id. at 19-20). Plaintiff argues that the Confidential Offer "ratified the promises and representations made therein." (ECF No. 30 at 13). As such, Plaintiff argues that he reasonably relied on the terms of the Confidential Offer. (Id.).

Under New Jersey law, "[t]he elements of promissory estoppel are: '1) a clear and definite promise, 2) made with the expectation that the promisee will rely upon it, 3) reasonable reliance upon the promise, 4) which results in definite and substantial detriment.'" *Newark Cab Association v. City of Newark*, No. 16-4681, 2017 WL 214075, at *7 (D.N.J. Jan 18, 2017) (quoting *E. Orange Bd. of Educ. v. N.J. Sch. Const. Corp.*, 405 N.J. Super. 132, 148 (App. Div. 2009)). Reasonable reliance does not exist where it is based on "a mere expression of future intention . . . because such expressions do not constitute a sufficiently definite promise." *Del Sontro v. Cendant Corp., Inc.*, 223 F. Supp 2d 563, 576 (D.N.J. 2002) (quoting *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1250 (3d Cir. 1989)).

Plaintiff's Complaint alleges that the Confidential Offer constituted a promise, that Defendant reasonably expected that it would induce action by Plaintiff, and that Plaintiff was reasonable to rely on it as a promise. (Compl. ¶¶ 60-63). However, this argument fails because the Confidential Offer stated, "[t]his offer is an expression of intent and *nothing implied shall have any legal binding obligation* except for breach of confidentiality." (Compl. at Exhibit A) (emphasis added). In other words, the Confidential Offer existed as a letter of intent to negotiate future terms. Reasonable reliance does not exist when based solely on future intentions "because such expressions do not constitute a sufficiently definite promise." *Del Sontro*, 223 F. Supp. 2d at 576 (quoting *In re Phillips Petroleum Sec. Litig.*, 881 F.2d at 1250). Accordingly, Plaintiff's claim

12

for promissory estoppel is dismissed without prejudice, as to allow Plaintiff an opportunity to amend his deficient pleading.

### E. Fraudulent Misrepresentation

Defendant moves to dismiss Plaintiff's claim for fraudulent misrepresentation for failure to state a claim upon which relief can be granted. (ECF No. 21-1 at 16-17). Defendant argues that "misrepresentation claims cannot be predicated upon statements that are promissory in nature at the time they are made and that involve actions to be performed at a future time." (Id. at 17). Further, Defendant argues that Plaintiff could not have reasonably relied on the Confidential Offer when it stated that it was not legally binding. (Id. at 18). In addition, Defendant maintains that any fraudulent misrepresentation claims alleged outside the Confidential Offer fail the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). (Id. at 18).

Plaintiff, for his part, argues that fraudulent misrepresentations occurred regarding Defendant's willingness to enter into an agreement and its ability and intent to fulfill its obligations had an agreement been reached. (ECF No. 30 at 11). Specifically, Plaintiff argues that there was a fraudulent misrepresentation when Defendant allegedly confirmed the existence of API and other materials then later refused to confirm the existence of these materials. (Id. at 12).

Claims sounding in fraud must be pled under the heightened standards of Federal Rule of Civil Procedure 9(b). *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984). The Third Circuit has set forth the following requirements for pleading fraud:

> In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984). Plaintiffs may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*

13

*Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004). With this in mind, the Court turns to New Jersey law. In order to plead a fraud-based claim in New Jersey, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (N.J. Sup. Ct. 1997). Moreover, "[t]he misrepresentation has to be one which is material to the transaction and which is a statement of fact, found to be false[.]" *Id.* at 607 (internal quotations omitted).

Here, Plaintiff has failed to adequately plead a claim for fraudulent misrepresentation. Plaintiff's general allegation that Defendant intentionally and knowingly made material promises and representations about the ability or intent to perform does not comply with the heightened pleading standard for fraud. Fed. R. Civ. P. 9(b). Moreover, Plaintiff's claim is predicated on alleged promises and representations contained in the Confidential Offer, which stated that "[t]his offer is an expression of intent and *nothing implied shall have any legal binding obligation* except for breach of confidentiality." (Compl. at Exhibit A) (emphasis added). This clearly indicates, as stated above, that the Confidential Offer was a letter of intent and thus did not speak to any "presently existing or past fact[.]" *Gennari*, 148 N.J. at 610.

Moreover, with respect to alleged misrepresentations made by the Defendant regarding its ability and intent to deliver the necessary products, inventory, materials, and files to Plaintiff, Plaintiff fails to establish the most basic element of fraud. (Compl. ¶¶ 32, 55). Namely, Plaintiff fails to allege that Defendant made a material misrepresentation. *See Gennari*, 148 N.J. at 610. In fact, Plaintiff fails to assert that Defendant made any false statement of fact altogether. Plaintiff appears to allege that there was a fraudulent misrepresentation when Defendant confirmed the

existence of API and other materials then later refused to confirm their existence. However, Plaintiff does not allege that the API and other materials do not exist. Additionally, Ms. Voelz's failure to confirm the existence of the regulatory files, eggs, and canisters of API is not a direct assertion of fact. (Compl. ¶ 34). Moreover, Ms. Voelz's failure to confirm the existence of these items is neither inconsistent with Dr. Sulley's earlier confirmation, nor does it amount to anything that can be construed as a material misrepresentation of a presently existing or past fact. Therefore, Plaintiff's claim for fraudulent misrepresentation is dismissed without prejudice, as to allow Plaintiff an opportunity to amend his deficient pleading.

### F. Negligent Misrepresentation

Defendant moves to dismiss Plaintiff's claim for negligent misrepresentation for failure to state a claim upon which relief can be granted. (ECF No. 21-1 at 16-17). Defendant argues that "misrepresentation claims cannot be predicated upon statements that are promissory in nature at the time they are made and that involve actions to be performed at a future time." (Id. at 17). Defendant further argues that Plaintiff could not have reasonably relied on the Confidential Offer when it stated that it was not legally binding. (Id. at 18). In opposition, Plaintiff argues that Defendant negligently misrepresented its willingness to enter into an agreement, and its ability and intent to fulfill its obligations had an agreement been reached. (ECF No. 30 at 11). Specifically, Plaintiff argues that negligent misrepresentation occurred when Defendant allegedly confirmed the existence of API and other materials then later refused to confirm their existence. (Id. at 12).

Under New Jersey law, a claim for negligent misrepresentation is the same as fraudulent misrepresentation, absent the requirement of scienter. *See Kaufman v. i-Stat Corp*, 165 N.J. 94, 110 (2000). "In particular, . . . negligent misrepresentation requires a showing that defendant negligently provided false information and that plaintiff incurred damages proximately caused by

its reliance on that information." *Highlands Ins. Co. v. Hobbs Group, LLC.*, 373 F.3d. 347, 351 (3d Cir. 2004) (citing *Karu v. Feldman*, 119 N.J. 135, 146-47 (1990)). Therefore, "[t]o establish a claim for negligent misrepresentation, a plaintiff must establish that (1) a false statement, (2) was negligently made, (3) plaintiff justifiably relied on that statement, and (4) suffered economic loss or injury because of the reliance." *Eberhart v. LG Electronics USA, Inc.*, 188 F. Supp. 3d 401, 409 (D.N.J. 2016).

Here, Plaintiff's claim for negligent misrepresentation fails for the same reasons as his claim for fraudulent misrepresentation. Plaintiff does not allege facts suggesting any false statement was made by Defendant. Indeed, the Confidential Offer was a letter of intent and thus did not speak to any fact constituting an actionable misrepresentation claim. Moreover, Plaintiff fails to allege that the API and other materials do not exist, or that Defendant inconsistently stated their existence. As such, Plaintiff fails to satisfy either of the first two elements of a claim for negligent misrepresentation under New Jersey law. *Id*. Accordingly, Plaintiff's claim for negligent misrepresentation is dismissed without prejudice, as to allow Plaintiff an opportunity to amend his deficient pleading.

### G. Innocent Misrepresentation

New Jersey law "do[es] not recognize innocent misrepresentation as an independent cause of action." *TekDoc Serv., LLC v. 3i-Infotech Inc.*, No. 09-6573, 2012 WL 3560794, at *11 (D.N.J. Aug. 16, 2012) (citing *Commercial Casualty Ins. Co. v. Southern Surety Co. of Des Moines, Iowa*, 100 N.J. Eq. 92, 96 (Ch. 1926)). Defendant has raised this issue in its motion, (ECF No. 21-1 at 17), and Plaintiff has conceded that he "intends to pursue only his claims for intentional and negligent misrepresentation." (ECF No. 30 at 10). Accordingly, Plaintiff's claim for innocent misrepresentation is dismissed with prejudice.

## IV. Conclusion

For the aforementioned reasons, Defendant's Motion to Dismiss is granted. Plaintiff's claims for Breach of Contract (Count I), Unjust Enrichment (Count II), "Intentional" Misrepresentation (Count III), Promissory Estoppel (Count IV), and Negligent Misrepresentation (Count V) are dismissed without prejudice. Further, Plaintiff's claim for Innocent Misrepresentation (Count VI) is dismissed with prejudice. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED: August 18, 2017

JOSE L. LINARES
CHIEF JUDGE, U.S. DISTRICT COURT